IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **S.R., Deceased, LAURA ROMO, and OMAR ROMO, Individually, and as Independent Administrator of the Estate of S.R., Deceased,** § § § § § | C.A. No. 4:25-cv-00508 | |
| Plaintiffs, § | | |
| § | | |
| v. § | **JURY DEMAND** | |
| § | | |
| **SPRING BRANCH INDEPENDENT SCHOOL DISTRICT, JAMILA TRESSIE SPENCER, and SOLIANT HEALTH, LLC, d/b/a SOLIANT HEALTH** § § § § § § | | |
| Defendants. § | | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW S.R., Deceased ("the Student") and his parents, Laura Romo, and Omar Romo, Individually, and as Independent Administrator of the Estate of S.R., Deceased (collectively "Plaintiffs" herein), and file this their *Original Complaint* alleging that the Defendants Spring Branch Independent School District (hereinafter referred to as "SBISD" or the "School District"), Jamila Tressie Spencer, and Soliant Health, LLC d/b/a Soliant Health (hereinafter referred to as "Soliant Health") violated the various rights of S.R., all as more specifically pled herein. Plaintiffs reserve the right to replead if new claims and issues arise upon further development of the facts, and as permitted by law. In support hereof, Plaintiffs would respectfully show this tribunal the following:

## I. INTRODUCTION

1. S.R., now deceased, was a child with severe Autism and Williams-Beuren Deletion Syndrome. S.R. had few self-help skills and required very close supervision at home, in his community, and at school. Because of S.R.'s disabilities, and his general inability to care for himself, School District staff would frequently provide services to S.R. On a daily basis, and normally several times each day, these services included feeding and changing. In providing these services to S.R. and his classmates, School District staff would use rubber gloves.

2. S.R. was well known to have an infantile-like propensity to chew objects around him. Because of this propensity, S.R. was a recognized choking hazard with a desperate need for close supervision from Defendants. Sadly, the School District failed to have a formal policy and procedure on the disposal of the soiled rubber gloves used in assisting S.R., and his classmates. Instead, the School District apparently had a custom and practice of leaving this important safety concern to individuals. As should be obvious, this was a mortal and reckless oversight by SBISD. On February 6, 2023, S.R. was left unsupervised in an area where a rubber glove was either improperly disposed of or improperly secured by School District staff. S.R. acquired this glove and later placed it into his mouth; subsequently, S.R. began to choke on the glove. S.R. was unable to breathe and belated attempts at CPR were ineffective. S.R. survived in an Intensive Care Unit in a coma for several days until his death on February 8, 2023. Plaintiffs file this *Original Complaint* as contemplated by Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §794 et seq.; the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12131 et

seq.; the 14th Amendment to the United States Constitution against the School District, and the Common Law against Jamila Tressie Spencer and Soliant Health.

## II. JURISDICTION

3. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and §1343 because the matters in controversy arise under the Constitution and laws of the United States.

## III. VENUE

4. Pursuant to 28 U.S.C. §1391 this Court is the proper Venue over this cause, as all events and omissions giving rise to Plaintiffs' claims occurred in the Southern District of Texas, Houston Division.

## IV. PARTIES

5. Plaintiffs reside at 14403 Still Meadow Drive, Houston, Texas 77079. For all times relevant to this complaint, S.R. lived with his parents at the same address.

6. The Spring Branch Independent School District is a school district organized under the laws of the State of Texas. It may be served through its Superintendent, Dr. Jennifer Blaine, at 955 Campbell Road, Houston, Texas 77024, (713) 464-1511 [Telephone], superintendent@springbranchisd.com [Email].

7. By information and belief, Jamila Tressie Spencer is an individual residing in Harris County, Texas. Jamila Tressie Spencer may be served with citation at 707 Reinicke St., Houston, Texas 77007.

8. Soliant Health, LLC d/b/a Soliant Health is a healthcare staffing service. Soliant Health is headquartered in Atlanta, Georgia, but has offices in Cobb, Georgia; Houston, Texas; and Greenville, South Carolina. It may be reasonably served through its registered agent, CT

Corporation System at 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

## V. STATEMENT OF FACTS

A.  ABOUT THE PLAINTIFF

9. S.R. was born on February 6, 2008. S.R. was a student with Autism Spectrum Disorder and Williams-Beuren Deletion Syndrome.

10. For all times relevant to this cause, S.R. was a student at Stratford High School within the SBISD.

11. S.R. had a propensity to place random objects in his mouth and to swallow these objects. Because of this propensity, while at home, S.R. would be under the constant supervision of his parents and/or a caregiver.

12. SBISD was aware of S.R.'s propensity in this regard and identified S.R. as a choking hazard. In fact, in the years prior to S.R.'s attendance at Stratford High School, while in Spring Forest Junior High School, a school also within SBISD, S.R.'s parents would occasionally spot objects in S.R.'s stool, including a piece of rubber. On another occasion, while at Spring Forest Junior High School, S.R. arrived home from school with tissue paper in his mouth. By information and belief, S.R. ingested these objects while under the care of SBISD and these incidents were brought to SBISD's attention. Thankfully, ingesting these objects did not appear to cause S.R. harm.

13. On or about September 30, 2018, however, while at Nottingham Elementary School and while under the care and (supposed) supervision of the School District, S.R. ingested a binder clip and subsequently began to choke on it. S.R. was hospitalized and intubated because of this incident. Thankfully, the ingestion and forcible removal of the binder clip

did not cause S.R. permanent harm. SBISD was aware of this incident.

14. To accommodate S.R.'s disabling condition and to assist SBISD, Laura Romo, S.R.'s mother, provided SBISD with an oral chewing device for S.R. to safely chew on. This device would hang by a lanyard from S.R.'s neck and it was intended to deter S.R. from seeking other objects to chew and to therefore minimize the danger of his choking on such objects. As an additional measure, Laura Romo even offered SBISD that S.R.'s caregiver stay with S.R. at school (at no cost to SBISD) to avoid further choking incidents. Tragically, this offer was declined by SBISD.

15. The concern in keeping S.R. safe from ingesting dangerous objects was especially important considering that School District staff would use rubber gloves while providing S.R. and his fellow students services in the classroom, such as feeding and changing. S.R. required daily feeding from SBISD and, typically, changing would be provided by SBISD to S.R. multiple times per day; as such, SBISD staff used rubber gloves with S.R. multiple times every day.

16. The School District was well-aware that S.R. was a choking hazard and his need for close supervision.

17. Similarly, the School District and its Board of Directors were also well-aware of the need to keep S.R.'s environment safe and free from rubber gloves and other small objects, and the harm that would befall S.R. if this environment were not provided.

18. Nevertheless, the Board apparently never developed a formal policy or procedure on how SBISD staff were to use, place, or dispose of soiled items, like rubber gloves, or other small objects accessible to S.R. and his classmates.

19. Moreover, on reason and belief, Plaintiffs contend that the School Board failed to train its staff on these important duties.

20. Taken together, Plaintiffs reasonably believe that the School District had a custom and practice whereby each of its staff were free to choose their own method and means for using, storing, placing and disposing of rubber gloves, sanitary items, and other small objects within the classroom.

21. After S.R.'s previous incidents of ingesting foreign objects at SBISD, particularly the September 30, 2018 incident involving the binder clip, the School District should have responded with a number of accommodations to make the environment safer for S.R. and his peers. For example, and not by way of limitation, the School District could have provided more staff, it could have allowed S.R.'s caregiver to assist S.R. at school, or even more basically, the School District could have made a formal School Board policy on how to address using, storing, placing and disposing of rubber gloves and other objects commonly in the classroom and instituted formal training for that purpose.

22. Upon reason and belief none of this occurred.

B.    INCIDENT ON FEBRUARY 6, 2023

23. S.R. arrived at Stratford High School as usual around 7:00 AM on February 6, 2023. It was S.R.'s fifteenth birthday.

24. On this day, S.R. was in class with several other students. In attendance was Ms. Connie Mirasol Bayaborda, a special education teacher; Ms. Shannon Etheridge, the Stratford High School nurse; Mr. John Farah, substitute teacher; Ms. Awilda Irizarry, substitute teacher and Ms. Beverly Ann Garrett, paraprofessional, all with the School District.

25. Additionally, Ms. Jamila Tressie Spencer, a speech language pathologist assistant and speech intern, was present in the classroom to assist in providing services to S.R. and his peers; by information and belief, these services were to include supervising, monitoring, and rendering aid to S.R. and his peers. On February 6, 2023, Jamila Tressie Spencer was an employee of Soliant Health, and effective on that date, Soliant Health and the School District had a contract whereby Jamila Tressie Spencer would provide the aforementioned services to S.R. and his peers at Stratford High School.

26. As stated, it was a routine custom and practice for staff in S.R.'s classroom to use rubber gloves while feeding and changing S.R. and other students. There were boxes of gloves located in the changing area of the classroom and other areas of the classroom to be used for these purposes.

27. Upon arrival at school, S.R. was confined much like an inmate in a cell, in a haphazardly constructed confined space, approximately four feet by eight feet. Throughout the morning of February 6, 2023, as evidenced by video surveillance footage obtained from S.R.'s classroom, S.R. was ignored by staff.

28. At various times, from such footage, S.R. can be seen with his shirt and/or hands in his mouth.

29. At no time during the morning of February 6, 2023, was S.R. provided with the oral chewing device provided by his mother. This device was instead located in S.R.'s backpack in the classroom and was freely available for use by the School District.

30. Throughout the school day, gloves, used gloves, and other small objects were left in numerous, unsecured locations throughout the school that were easily accessible to S.R.

and other students.

31. At approximately 11:30 AM, S.R. was fed lunch in his classroom. In feeding S.R., Ms. Bayaborda used rubber gloves.

32. After feeding S.R. lunch, Ms. Bayaborda and one other SBISD employee entered the changing area to change S.R.'s diaper, and to place S.R.'s soiled shirt into the washing machine. Per their usual practice and as would be expected, SBISD staff wore gloves during this process.

33. Around 12:00 PM and for a period of time, S.R. is observed with his class and other classes in one of the Stratford High School gymnasiums.

34. While ambling unsupervised through the gymnasium, S.R. was in visible distress on numerous occasions. Multiple SBISD employees were in the gymnasium during this time. At all times, these SBISD employees completely ignored S.R.'s distress and failed to investigate or assist him. SBISD employees were instead huddled together, engaged in some type of conversation.

35. During this time, on the other side of the gymnasium, Ms. Spencer was sitting in a chair assigned with the task of supervising S.R. and others. At this time, S.R. was in visible distress on numerous occasions, and Ms. Spencer completely ignored S.R.'s distress and failed to investigate or assist him. Shockingly, Ms. Spencer was instead apparently preoccupied with her cellphone, and like the SBISD employees, she neglected her duties.

36. S.R. would eventually trip and fall over another student sitting on the floor adjacent to Ms. Spencer.

37. Only upon S.R. falling, did Ms. Spencer then look up from her cellphone and call Ms.

Bayaborda for assistance.

38. By this point, S.R. had ceased breathing, he had turned blue, and he was in a state of unconsciousness.

39. At this time, Ms. Spencer and Ms. Bayaborda were the only adults at the immediate scene. And notably, neither of Ms. Spencer or Ms. Bayaborda began CPR and/or other life-saving measures, including attempts to remove what should have been a known foreign object in S.R.'s airway- such as the Heimlich maneuver.

40. In fact, Ms. Spencer- who is CPR certified- was told by Ms. Bayaborda to not administer these potentially life-saving measures. Thereafter, Ms. Etheridge arrived at the scene, and she begain to administer CPR to S.R., and used a defibrillator on S.R. At the time of the fall or shortly thereafter, S.R. was unresponsive, and his heart stopped beating.

41. EMS later arrived and began medical treatment for S.R., including the administration of CPR. After a period of time, and unsuccessful attempts at CPR, S.R. was then placed on a stretcher and was taken to an ambulance. While in the ambulance, EMS attempted to intubate S.R. During this attempt, EMS realized that a foreign object was lodged in S.R.'s airway. This foreign object was removed by EMS with forceps and S.R. was intubated. The foreign object was a purple rubber glove used by SBISD staff. After the glove was removed from S.R.'s airway, EMS successfully revived S.R., and his heart began beating again.

C. AFTERMATH OF THE INCIDENT

42. S.R. was transported by ambulance in critical condition to the Intensive Care Unit at the Texas Children's Hospital West Campus.

43. At the time of arrival, S.R. was only alive due to medical intervention. S.R. was kept alive in a coma for two (2) days for purposes of harvesting his organs. On February 8, 2023, S.R. was determined to be brain dead, and thus medical intervention was terminated and S.R. passed away. It was two (2) days after his fifteenth birthday.

44. S.R.'s cause of death was determined to be Asphyxia due to obstruction of airway by foreign object (glove) in a person with Williams-Beuren Depletion Syndrome.

45. Notably, SBISD apparently formed the opinion that S.R. was at risk in the classroom to the extent that it was necessary to keep him confined in a haphazardly constructed prison-like cell. However, when S.R. went to the gymnasium, he was not monitored, supervised, or observed in any manner by Defendants, rather, S.R. was allowed to aimlessly wander about the gymnasium while choking to death. Prior to the incident that caused S.R.'s death, Plaintiffs had advised SBISD on numerous occasions of their concern about S.R. not being regulated, monitored, or supervised while in the gymnasium. In fact, Plaintiffs had offered to have someone come to the school to supervise S.R., at no cost to SBISD. At all relevant times, SBISD rejected Plaintiffs' pleas for S.R.'s safety. Further, in an effort to keep S.R. from placing foreign objects in his mouth, Plaintiffs provided an oral chewing device to SBISD for use by S.R. On February 6, 2023, throughout the entirety of S.R.'s final day at school, S.R.'s oral chewing device was located in his backpack in the classroom and not on his person.

## VI. SECTION 504 OF THE REHABILITATION ACT OF 1973 CLAIMS

46. The School District receives federal funds and thus must follow the requisites of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504").

47. The implementing regulations of Section 504 require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled student's unique and individualized needs, and fails to accommodate that child's disability and keep the student safe, it violates Section 504.

A. PROFESSIONAL BAD FAITH OR GROSS MISJUDGMENT CLAIM

48. Plaintiffs assert that the School District Defendant demonstrated professional bad faith or gross misjudgment and/or mismanagement of the Student's educational plan, also as contemplated by the Rehab Act, and discriminated against him thereby.

B. FAILURE TO KEEP SAFE CLAIM

49. In addition and in alternative to the above, the Plaintiffs asserts that the School District Defendant failed to provide him a safe and non-hostile educational environment, and as such he is a victim of discrimination based upon disability also pursuant to Section 504.

C. FAILURE TO ACCOMMODATE CLAIM

50. In addition and in alternative to the above, the above noted facts also support a plausible claim the School District Defendant "failed to accommodate" his disabilities pursuant to the Rehab Act and similar to the ADA claim noted below.

D. DISPARATE TREATMENT

51. In addition and in alternative to the above, the above noted facts also support a plausible claim the Student was a victim of "Disparate Treatment" a separate cause of action pursuant

to the Rehab Act.

52. The acts and omissions of the School District were the proximate cause of the Students injuries noted herein.

## VII.   CLAIMS RELATED TO THE AMERICANS WITH DISABILITIES ACT

53. In addition, and in the alternative to the above, the facts as previously described demonstrate that S.R. was a victim of discrimination based upon disability by the School District. He, by and through his parents, thus has a plausible claim pursuant to the Americans with Disabilities Act, 42 U.S.C. §12131, et seq ("ADA") for the School District's failure to provide him reasonable accommodations.

## VIII. CLAIMS PURSUANT TO THE 14TH AMENDMENT OF THE CONSTITUTION

A. Due Process Claims

54. Plaintiffs assert that SBISD failed to sufficiently train staff to address the needs of children in general– and especially a student with a disability like S.R., thereby violating his rights pursuant to the Fourteenth Amendment of the Constitution of the United States, for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

55. In addition, Plaintiffs contend that SBISD failed to sufficiently supervise staff regarding addressing the needs of children in general– and especially a student with a disability like S.R.

56. Such failures by SBISD were a moving force in violating the rights of S.R., as contemplated by Due Process of the Fourteenth Amendment of the Constitution of the United States, for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

B. Equal Protection Claim

57. The failures by SBISD were a moving force in violating the rights of S.R., as a class of one, as contemplated by the Equal Protection of the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

C. Policy and Practice

58. During the relevant time period contemplated by this cause of action, SBISD—by and through its designees—had an actual policy, practice, and custom of conscious and deliberate indifference to federal and state law, federal and state administrative directives, and SBISD's own policies and procedures regarding the treatment of S.R., and such failures were a moving force in the injuries to S.R., for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

59. Such failures by SBISD caused injuries and eventually death to S.R.

## IX. CLAIMS PURSUANT TO STATE AND COMMON LAW

A. NEGLIGENCE BY JAMILA TRESSIE SPENCER

60. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth and each paragraph below incorporates by reference also as if fully set forth herein, the ones above it.

61. Plaintiffs allege that at the time of S.R.'s injury, on February 6, 2023, that Jamila Tressie Spencer had a duty to monitor, supervise, protect, and/or to render aid to S.R.  Jamila Tressie Spencer breached this duty by failing to monitor, supervise, protect, and/or to render aid to S.R.  Jamila Tressie Spencer's breach of duty was a proximate cause of S.R.'s choking injury on February 6, 2023, and subsequent death on February 8, 2023, equating

to negligence.

B.    GROSS NEGLIGENCE BY JAMILA TRESSIE SPENCER

62.    Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth and each paragraph below incorporates by reference also as if fully set forth herein, the ones above it.

63.    Plaintiffs allege that at the time of S.R.'s injury, on February 6, 2023, Jamila Tressie Spencer had a duty to monitor, supervise, protect, and/or to render aid to S.R. Jamila Tressie Spencer breached this duty by failing to monitor, supervise, protect, and/or to render aid to S.R. Jamila Tressie Spencer's breach of duty was a proximate cause of S.R.'s choking injury on February 6, 2023, and subsequent death on February 8, 2023, equating to gross negligence.

C.    NEGLIGENCE BY SOLIANT HEALTH

64.    At the time of S.R.'s injury on February 6, 2023, Jamila Tressie Spencer was acting within the course and scope of her employment with Soliant Health. Accordingly, Soliant Health is liable for the actions of its employee or agent, Jamila Tressie Spencer, under the legal doctrine of Respondeat Superior. Therefore, Soliant Health is liable to Plaintiffs for negligence.

65.    Further, Soliant Health ratified the acts, omissions and customs of its own personnel and staff. As a result, Soliant Health is responsible for the acts and omissions of staff persons, including Jamila Tressie Spencer, who were otherwise responsible for the safety of and services for S.R.

D.    GROSS NEGLIGENCE BY SOLIANT HEALTH

66. At the time of S.R.'s injury on February 6, 2023, Jamila Tressie Spencer was acting within the course and scope of her employment with Soliant Health. Accordingly, Soliant Health is liable for the actions of its employee or agent, Jamila Tressie Spencer, under the legal doctrine of Respondeat Superior. Therefore, Soliant Health is liable to Plaintiffs for gross negligence.

67. Further, Soliant Health ratified the acts, omissions and customs of its own personnel and staff. As a result, Soliant Health is responsible for the acts and omissions of staff persons, including Jamila Tressie Spencer, who were otherwise responsible for the safety of and services for S.R.

E. WRONGFUL DEATH & SURVIVAL CLAIMS- UNDER CHAPTER 71 OF THE TEXAS CIVIL PRACTICE AND REMEDIES CODE

68. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth and each paragraph below incorporates by reference also as if fully set forth herein, the ones above it.

69. As discussed herein, Plaintiffs allege that S.R.'s death was caused by the negligence and gross negligence of Jamila Tressie Spencer and Soliant Health, who breached their duty of care to S.R. Plaintiffs reasonably believe that had S.R., survived, he would have had capacity to seek damages on this claim. Further, S.R.'s heirs and beneficiaries suffered due to this breach and S.R.'s subsequent death.

## IX. RATIFICATION AND RESPONDEAT SUPERIOR

A. FOR THE SCHOOL DISTRICT AND SCHOOL BOARD

70. The Defendant SBISD ratified the acts, omissions and customs of school district personnel and staff. As a result, the SBISD is responsible for the acts and omissions of staff persons who were otherwise responsible for the education and provision of services to S.R.

71. Additionally, the School Board is responsible for the acts and omissions of staff persons who were otherwise responsible for the duty to provide S.R. a FAPE under the IDEA and to keep him free from discrimination based upon disability, all pursuant to the theory of Respondeat Superior.

## X. SPOLIATION

72. Plaintiffs hereby require and demand that Defendants preserve and maintain all evidence pertaining to any claim or defense related to violations, causes of action, facts, and resulting damages set forth herein and/or made the basis of this complaint and request for due process, including– but not limited to– statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence, potential evidence, or potentially discoverable documents.

73. Failure to maintain such items will constitute "spoliation" of evidence, which will necessitate use of the spoliation interference rule—an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case.

## XI. DAMAGES

74. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

75. As a direct and proximate result of the Defendants' conduct, Plaintiffs suffered– and continue to suffer– injuries and damages for which they are entitled to recover herein including but not limited to:

a. Nominal and consequential damages;

b. Actual damages;

c. Loss of past educational opportunities;

d. Loss of future educational opportunities;

e. Pain and suffering in the past for S.R.;

f. Pain and suffering in the past for S.R.'s heirs;

g. Pain and suffering in the future;

h. Mental anguish in the past for S.R.;

i. Mental anguish in the past for S.R.'s heirs;

j. Mental anguish in the future;

k. Physical disfigurement in the past for S.R.;

l. Reasonable and necessary medical costs incurred as a result of S.R.'s injury and death;

m. Reasonable funeral and burial expenses incurred as a result of S.R.'s injury and death;

n. Loss of companionship suffered in the past;

o. Loss of companionship suffered in the future;

p. Any additional out-of-pocket expenses incurred by S.R.'s family but for the acts and omissions of Defendants.

q. The loss of household services, consortium, pecuniary loss, companionship and society which heirs and wrongful death beneficiaries of Sebastian Romo received from Sebastian Romo prior to his last illnesses and death;

    r.        Punitive and exemplary damages;

    s.        Prejudgment interest on all elements of damages as allowed by law; and,

    t.        Any other actual, compensatory, punitive and exemplary damages recoverable pursuant to the wrongful death and survival act as set out by Chapter 71 of the Texas Civil Practices and Remedies Code.

## XII. DEMAND FOR JURY TRIAL

76. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs pray in the manner and particulars noted above against Defendants jointly and severally, for the Court to enter a judgment in an amount sufficient to fully compensate them for the elements of damages enumerated above, judgment for damages, recovery of attorney's fees and costs for the preparation and trial of this cause of action, equitable relief requested and for its appeal if required, pursuant to the ADA and Section 504, the United States Constitution, and the Common Law, together with pre- and post-judgment interest, and court costs expended herein, and for such other relief as this Court in equity, deems just and proper and for such other relief as the Court may deem just and proper in law or in equity.

Respectfully submitted,

/s/ Martin J. Cirkiel
Martin J. Cirkiel
State Bar No. 00783829
Fed. ID. 21488
Marty@cirkielaw.com [Email]

Julianna S. Swann
State Bar No. 24130061
Julianna@cirkielaw.com [Email]

Cirkiel Law Group, P.C.

1005 West 41st Street, Suite 201
Austin, Texas 78756
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]; and

RHODES HUMBLE LLP
Mr. Kenneth Rhodes
State Bar No.: 16821300
Mr. Matthew Humble
State Bar. No.: 24116546
Rhodes Humble LLP
1716 Briarcrest Dr., Suite 600,
Bryan, Texas 77802(979) 459-9888 [Telephone]
krhodes@rhodes-humble.com [Email]
mhumble@rhodes-humble.com [Email]

COUNSEL FOR PLAINTIFFS