IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| S.R., Deceased, LAURA ROMO, and OMAR ROMO, Individually, and as Independent Administrator of the Estate of S.R., Deceased, § § § § § | | |
| *Plaintiffs*, § § | | |
| v. § § | CIVIL ACTION NO. 4:25-cv-00508 | |
| SPRING BRANCH INDEPENDENT SCHOOL DISTRICT, JAMILA TRESSIE SPENCER, and SOLIANT HEALTH, LLC, d/b/a SOLIANT HEALTH, § § § § § § § | | |
| *Defendants*. § | | |

### DEFENDANT SPRING BRANCH INDEPENDENT SCHOOL DISTRICT'S MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Defendant Spring Branch Independent School District (SBISD or the District) files this Motion to Dismiss Plaintiffs' Original Complaint (Dkt. 1) pursuant to FRCP 12(b)(6).

### Nature and Stage of Proceeding

This case arises out of claims by Plaintiffs Laura Romo and Omar Romo, parents of S.R., Deceased, and Independent Administrators of the Estate of S.R., Deceased, that SBISD discriminated against S.R. by failing to accommodate his

1

disability and violated his Fourteenth Amendment rights by failing to train its staff to address the needs of children by not properly storing or disposing of rubber gloves. Plaintiffs bring claims against SBSID under Section 504 of the Rehabilitation Act of 1973 (Section 504), Title II of the Americans With Disabilities Act (ADA), and the Fourteenth Amendment to the U.S Constitution (via Section 1983). All of Plaintiffs' claims against SBISD should be dismissed due to their failure to state a claim upon which relief may be granted as set forth below.

### Pertinent Factual Allegations as Pled by Plaintiffs

Plaintiffs plead that S.R. attended SBISD's Stratford High School (SHS) at "all times relevant to this cause." Dkt. 1 at ¶ 10. According to Plaintiffs, S.R. suffered from Autism Spectrum Disorder and Williams-Beuren Deletion Syndrome. *Id*. at ¶ 9. Plaintiffs claim that S.R. "had a propensity to place random objects in his mouth and swallow those objects." *Id*. at ¶ 11. "To accommodate S.R.'s disabling condition," Plaintiffs claim they provided SBISD with an oral chewing device that reportedly hung by a lanyard from S.R.'s neck and was intended to deter S.R. from chewing other objects and minimize the danger of choking. *Id*. at ¶14. S.R. required daily feedings and changings and SBISD's staff allegedly used rubber gloves while providing S.R. those services. *Id*.

Plaintiffs allege that on February 6, 2023, S.R. arrived to school around 7:00 a.m. with his chewing device in his backpack and upon his arrival he was placed

in a "constructed confined space." *Id*. at ¶¶ 23, 27, & 29. "Throughout the school day, gloves, used gloves, and other small objects were left in numerous, unsecured locations throughout the school that were easily accessible to S.R." *Id*. at ¶ 30. Around 11:30 a.m., Plaintiffs allege that S.R.'s teacher, Ms. Bayaborda, while wearing rubber gloves, fed S.R. and she and another staff member changed him while wearing gloves. *Id*. at ¶¶ 31-32. Around 12:00 p.m., S.R. is allegedly observed with other students in SHS's gymnasium. *Id*. at ¶¶ 33-34. Plaintiffs allege, "S.R. would eventually trip and fall over another student" where he ceased breathing, turned blue, and was in a state of unconsciousness. *Id*. at ¶¶ 36-38. SHS's school nurse, Ms. Etheridge, arrived and began to administer CPR and used a defibrillator. *Id*. at ¶ 40. According to Plaintiffs, EMS then arrived and attempted to intubate S.R. and in doing so, discovered a foreign object in S.R.'s airway. *Id*. at ¶ 41. S.R. was transported to Texas Children's Hospital where Plaintiffs state he remained in a coma for two days before being determined to be brain dead. *Id*. at ¶ 43. On February 8, 2023, medical intervention was terminated and S.R. passed away. *Id.* at ¶ 43.

## Standard of Review

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734-35 (5th Cir. 2019). "A complaint must include more than mere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action.'" *Kopp v. Klein*, 894 F.3d 214, 218-19 (2018) (quoting *Iqbal*, 556 U.S. at 678). Dismissal is also appropriate if an affirmative defense appears on the face of the complaint. *Alexander v. Verizon Wireless Services, LLC*, 875 F.3d 243, 249 (5th Cir. 2017).

## Summary of the Argument

- Plaintiffs fail to plead viable Section 504 or ADA claims against SBISD as they do not identify any accommodations they requested from the District, they do not allege the District refused any requested accommodations, and they do not allege any facts demonstrating that District officials engaged in conduct towards S.R. that constituted bad faith, gross misjudgment, or a particular negative animus toward learning disabled children.

- Plaintiffs' Fourteenth Amendment equal protection claim against SBISD fails as Plaintiffs do not allege any facts that demonstrate S.R. received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent. Plaintiffs' Fourteenth Amendment claims against SBISD also fail because they do not plead that

SBISD's Board of Trustees was aware of, approved of, and was deliberately indifferent to a persistent, widespread practice of employees of improperly storing or disposing of rubber gloves that was the moving force behind S.R.'s alleged constitutional deprivation.

## Argument and Authorities

A. ***Plaintiffs' Section 504 and ADA claims against SBISD must be dismissed as they fail to plead facts supporting any of the elements of these claims.***

Section 504 was enacted "to ensure that handicapped individuals are not denied jobs or other benefits because of prejudiced attitudes or ignorance of others." *Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (quoting *Brennan v. Stewart*, 834 F.3d 1248, 1259 (5th Cir. 1988)), *cert. denied*, 540 U.S. 810 (2003). Similarly, "[t]he ADA is a federal anti-discrimination statute designed '[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Delano-Pyle*, 302 F.3d at 574 (quoting *Rizzo v. Children's World Learning Centers, Inc.*, 173 F.3d 254, 261 (5th Cir, 1999)). Much like Section 504, Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

5

The close relationship between Section 504 and Title II of the ADA means that precedents interpreting either law generally apply to both. *Smith v. Harris Cty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020); *see also Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (per curiam) ("The [Rehabilitation Act] and the ADA are judged under the same legal standards, and the same remedies are available under both Acts."); *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005) ("the only material difference between the two provisions lies in their respective causation requirements"), *cert. denied*, 547 U.S. 1098 (2006)

Accordingly, in order to avoid dismissal, Plaintiffs must allege facts sufficient to prove that: (1) S.R. was a qualified individual within the meaning of the ADA or Section 504; (2) S.R. was excluded from participation in, or was denied the benefits of, services, programs, or activities for which the public entity was responsible or was otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability. *Smith*, 956 F.3d at 317; *see also Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855, F.3d 681, 690 (5th Cir. 2017). Furthermore, in order to recover monetary damages, Plaintiffs must allege and prove that SBISD intentionally discriminated against S.R. in violation of the ADA or Section 504. *See Delano-Pyle*, 302 F.3d at 575 ("[I]n order to receive compensatory damages for violations of the Acts, a plaintiff must show intentional discrimination.").

### *1. Bad faith and failure to accommodate.*

In order to bring an action under Section 504 or the ADA for failing to provide adequate services to a child with a disability, a plaintiff must allege facts showing that school officials acted with bad faith or gross misjudgment. *J.D. v. Georgetown Indep. Sch. Dist.*, 2011 WL 2971284, at *7 (W.D. Tex. 2011) (citing *Colin v. Schmidt*, 715 F.2d 1, 10 (1st Cir. 1983) (finding that plaintiffs could not state a Section 504 discrimination claim where they did not allege that the defendants "have a particular animus toward learning disabled children.")). This is because Congress did not intend to create general tort liability for educational malpractice. *See D.A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010).

In the context of the IDEA, the Fifth Circuit has held that "facts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under § 504 or ADA against a school district predicated on a disagreement over compliance with the IDEA." *D.A.*, 629 F.3d at 455. Courts in this circuit, in considering *Delano-Pyle*'s "intentional discrimination" standard, require plaintiffs asserting Section 504 claims to "link the discrimination claims to some evidence of prejudice, ill-will, or spite…" *See, e.g., Washington ex rel. J.W. v. Katy Indep. Sch. Dist.*, 403 F.Supp.3d 610, 622 (S.D. Tex. 2019) (emphasis added).

7

Plaintiffs assert that SBISD demonstrated bad faith by mismanaging S.R.'s educational plan and thereby discriminated against him. Dkt. 1 at ¶ 48. However, in their Complaint, Plaintiffs reference S.R.'s "education plan" a single time and they fail to identify any details of the "education plan" or how SBISD officials purportedly failed to manage the plan so poorly that the mismanagement amounted to bad faith. *Id*. at ¶ 48. That is because they cannot allege such facts.

Likewise, to avoid dismissal of their failure-to-accommodation claim, Plaintiffs must allege facts sufficient to prove that: (1) S.R. is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations. *Smith*, 956 F.3d at 317. Plaintiffs bear the burden of requesting reasonable accommodations. *See Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007) (citing *Loulseged v. Akzo Nobel, Inc.*, 178 F.3d 731, 736 n. 4 (5th Cir. 1999)).

Here, Plaintiffs' Complaint falls far short as they do not and cannot identify any accommodations they requested from the District, they do not and cannot allege that the District refused any such accommodations, and they do not and cannot alleged any facts demonstrating that District officials engaged in conduct constituting bad faith, gross misjudgment, or a particular animus toward learning disabled children. *See generally* Dkt. 1. At most, Plaintiffs plead that S.R.'s mother provided a chewing device to "SBISD" (Dkt. 1 at ¶ 14); however, Plaintiffs fail to

8

identify who at SBISD was "provided" with the device, who at SBISD knew about the device, whether the device was part of S.R.'s education plan, or whether the device was a requested (and formally approved) accommodation for a qualifying disability. While Plaintiffs plead that the device was reportedly in S.R.'s backpack (Dkt. 1 at ¶ 29), they cannot and do not plead that SBISD officials knew the device was in S.R.'s backpack or that some SBISD official intentionally refused or prevented S.R. access to the device. *See generally* Dkt. 1.

Furthermore, Plaintiffs do not and cannot plausibly assert that SBISD officials engaged in conduct toward S.R. arising out of "prejudice, ill-will or spite." *See Washington*, 403 F.Supp.3d at 622. Despite alleging that S.R. was reportedly "confined" in a constructed space, Plaintiffs also allege that gloves were "left in numerous, unsecured locations throughout the school that were easily accessible to S.R." Dkt. 1 at ¶¶ 27 & 30. If S.R. was confined, then it follows that he could not then freely access gloves in numerous locations throughout the school. Plaintiffs also hypothesize that because "SBISD staff wore gloves" while feeding and changing S.R. (*Id*. at ¶ 32) that he was then "left unsupervised in an area where a rubber glove was *either* improperly disposed of or improperly secured by School District staff." *Id*. at ¶ 2 (emphasis added). This is pure speculation by Plaintiffs and is essentially a *res ipsa loquitor* negligence theory, which is far below the requisite liability standard applicable to Plaintiffs' claims.

Plaintiffs do not and cannot identify how, when, or where S.R. obtained a glove, or who (if anyone) at SBISD knew S.R. obtained a glove, which makes it impossible for Plaintiffs to plead intentional discrimination. Plaintiffs cannot plead that S.R. obtained the glove from SBISD or that any SBISD officials were aware that S.R. had a glove let alone that the glove was in his throat, and they certainly do not plead that SBISD officials intentionally provided S.R. with a glove to carry out an intentional negative animus towards S.R. as a learning disabled child. In fact, nowhere in their Complaint do Plaintiffs allege that SBISD officials intentionally discriminated against S.R. based upon his disability. "A failure to implement accommodations, without more, does not amount to professional bad faith or gross misjudgment." *McDavid v. Houston Indep. Sch. Dist.*, 2021 WL 4555241, at *3 (S.D. Tex. 2021).

Because Plaintiffs' Complaint does not support a factual link between S.R.'s injury and any action or inaction by SBISD officials that qualifies as intentional discrimination against S.R., their Section 504 and ADA bad faith and failure to accommodate claims against the District fail under the *Delano-Pyle* standard. Moreover, none of Plaintiffs' allegations can plausibly link the actions of SBISD officials to "prejudice, ill-will, or spite" against S.R. and his disability as required by Fifth Circuit jurisprudence. *See Washington*, 403 F. Supp. 3d at 622. Accordingly,

Plaintiffs' Section 504 and ADA bad faith and failure to accommodate claims against SBISD must be dismissed.

### 2. *Failure to keep safe / hostile educational environment.*

Plaintiffs next allege that SBISD failed to provide S.R. with a safe and non-hostile educational environment, and as such S.R. is a victim of discrimination based upon his disability. Dkt. 1 at ¶ 49. The Fifth Circuit has never determined whether hostile educational environment claims are cognizable under Section 504 or the ADA. *See Harrison v. Klein Indep. Sch. Dist.*, 856 F. App'x 480, 487 n. 6 (5th Cir. 2021) ("Because we find the deliberate indifference element unmet here, we need not determine whether our precedent supports a hostile educational environment claim under the ADA or [Section 504]."). However, the Fifth Circuit has determined that to plead a claim for a hostile educational environment a plaintiff must allege that (1) he was an individual with a disability, (2) he was harassed based on his disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his education and created an abusive educational environment, (4) the defendant knew about the harassment, and (5) the defendant was deliberately indifferent to the harassment. *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 996 (5th Cir, 1994).

Failure to properly store or dispose of rubber gloves does not constitute discrimination under the ADA or Section 504 because Plaintiffs have not pled that

the failure was due to intentional discrimination or that the District was deliberately indifferent. *See E.M. bn/n/f Guerra v. San Benito Consol. Indep. Sch. Dist.*, 374 F. Supp.3d 616, 624-625 (S.D. Tex. 2019) (requiring a showing that defendant knew a federally protected right was substantially likely to be violated and failed to act despite that knowledge). "So long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals," school officials are not liable under Section 504 of Title II of the ADA. *Reed v. Kerens Indep. Sch. Dist.*, 2017 WL 2463275, at *13 (N.D. Tex. 2017). Plaintiffs do not and cannot allege that S.R. was singled out or treated differently from other students because he was disabled. *See generally* Dkt. 1. Likewise, Plaintiffs do not and cannot allege that S.R. was harassed by SBISD officials let alone that any harassment was sufficiently severe or pervasive that it created an abusive environment. *Id*. Accordingly, Plaintiffs' Section 504 failure to keep safe claim against SBISD must be dismissed.

   3. ***Disparate treatment.***

Plaintiffs next attempt to allege a "disparate treatment" discrimination theory under Section 504. Dkt. 1 at ¶ 51. However, Plaintiffs do not plead any facts sufficient to show that S.R. was treated differently than any nondisabled children because of his disability and that this amounted to disparate treatment. *See Borden v. Fort Bend Cty., Tex.*, 2019 WL 6344473, at * 13 (S.D. Tex. 2019) ("[Plaintiff]

claims she was placed in a disciplinary cell solely due to her disability and thus treated differently than inmates who are not disabled. The motion to dismiss the ADA claims against the County is DENIED."). Additionally, treatment of a disabled student may be different from a non-disabled student but that doesn't necessarily make it discriminatory. "If different were always discriminatory, then even disability accommodations would be discriminatory." *J.W. v. Paley*, 81 F.4d 440, 451 (5th Cir. 2023). Because Plaintiffs fail to plead a "disparate treatment" claim for intentional discrimination, their Section 504 disparate treatment claim against SBISD must be dismissed.

**B.**     ***Plaintiffs' constitutional claims against SBISD must be dismissed due to their failure to plead that S.R. was treated differently from similarly situated individuals based on discriminatory intent and failure to plead the requisite elements of municipal liability.***

Plaintiffs' Fourteenth Amendment due process and equal protection[1] claims against SBISD must also be dismissed because they fail to plead, and cannot plead, the elements of municipal liability under Section 1983. Furthermore, Plaintiffs fail to plead a viable Fourteenth Amendment equal protection claim as a matter of law.

Plaintiffs allege a class of one equal protection claim. Dkt. 1 at ¶ 57. The Supreme Court recognized that an equal protection claim can be brought by "'a

---

[1] Plaintiffs have not plead any facts to support a cause of action under the equal protection clause of the Fourteenth Amendment apart from referencing the clause itself. *See generally* Dkt. 1.

13

class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The equal protection clause "is essentially a direction that all persons similarly situated should be treated alike." *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988) (citing *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)). A plaintiff cannot succeed merely by alleging "disproportionate impact alone." *Cook v. Hopkins*, 795 Fed. App'x 906, 916 (5th Cir. 2019). Instead, Plaintiffs must allege facts that tend to show S.R. "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Ruvalcaba v. Angleton Indep. Sch. Dist.*, 2022 WL 340592, at *3 (5th Cir. 2022). Plaintiffs do not allege any facts that show S.R. was treated differently from similarly situated individuals or that unequal treatment of S.R. stemmed from discriminatory intent. *See generally* Dkt. 1. Accordingly, Plaintiffs' "class of one" equal protection claim against SBISD fails and must be dismissed.

In order to establish municipal liability and affix liability to SBISD under Section 1983, Plaintiffs must allege that (1) the constitutional violation was a direct result of the execution of an official "custom" or "policy"; (2) the custom or policy was approved or sanctioned by the District; (3) the final policymaker acted with

deliberate indifference; and (4) the custom or policy was the "moving force" behind the constitutional violation. *Penny v. New Caney Indep. Sch. Dist.*, 2013 WL 2295428, at *4 (S.D. Tex. 2013) (Rosenthal, J.).

The Fifth Circuit defines official policy as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [district] … or by an official to whom the [district] has delegated policy-making authority; or

2. A persistent, widespread practice of [district] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [district] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the district or to an official to whom that body had delegated policy-making authority.

*Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995) (quoting *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)) (alterations in original). Notably, "'[m]unicipal liability cannot be sustained under a theory of respondeat superior. [T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability.'" *Penny*, 2013 U.S. Dist. LEXIS 73375, at *10 (quoting *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2011)).

Texas law is clear that final policymaking authority in a public school district rests with the district's board of trustees. *Rivera*, 349 F.3d at 247-48; *Jett v. Dallas*

15

*Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993); *see also* Tex. Educ. Code § 11.151(b). Accordingly, Plaintiffs must demonstrate that SBISD's Board adopted an unconstitutional policy that caused the claimed injuries and that it adopted the policy with deliberate indifference to its consequences in violation of S.R.'s federally protected rights. *See Synder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998). Because Plaintiffs cannot plead that any of the actions they complain about were the result of an actual policy officially adopted by SBISD's Board (the District's sole and exclusive policymaker), Plaintiffs must instead show "[a] persistent, widespread practice of [district] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [district] policy." *Eugene*, 65 F.3d at 1304 (insertion in original).

"Isolated unconstitutional actions by municipal employees will almost never trigger liability." *Rivera*, 349 F.3d at 248. "A pattern is tantamount to official policy when it is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (citing *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). Prior incidents used to prove a pattern "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body

of knowledge that the objectionable conduct is the expected, accepted practice of [its] employees." *Webster*, 735 F.3d at 842. This requires similarity and specificity rather than all "bad" or unwise acts. *Peterson*, 588 F.3d at 851.

In their Complaint, Plaintiffs make conclusory allegations masquerading as facts. *See S. Christian Leadership Conf. v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."). Specifically, Plaintiffs allege that SBISD's "Board of Directors were also well-aware of the need to keep S.R.'s environment safe and free from rubber gloves…" and that "the Board *apparently* never developed a formal policy or procedure on how SBISD staff were to use, place, or dispose of soiled items, like rubber gloves…accessible to S.R." Dkt. 1 at ¶¶ 17-18 (emphasis added). What is telling about Plaintiffs' allegations is that they fail to include any factual details about how the Board was "well-aware" of the need to keep S.R.'s environment free from rubber gloves, particularly where Plaintiffs do not plead the existence of any similar incidents involving S.R. and rubber gloves prior to February 6, 2023. *See generally* Dkt. 1. Furthermore, what the Board "apparently" did or did not do is purely speculative.

Plaintiffs also advance a theory that SBISD failed to train or supervise its employees "regarding addressing the needs of children in general—and especially a

student with a disability like S.R." Dkt. 1 at ¶¶ 54-55. Plaintiffs' theory regarding the District's alleged failure to train or supervise its employees is inadequate to establish a viable municipal liability claim against SBISD. For SBISD to be liable for failure to train or supervise, Plaintiffs must plead that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference to the constitutional right allegedly violated. *See Estate of Davis ex rel. McCully v. City of N. Richland Hills,* 406 F.3d 375, 381–82 (5th Cir.2005). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis,* 406 F.3d at 381. Furthermore, to prove deliberate indifference, Plaintiffs must demonstrate "at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Chestnut v. City of Quincy*, 513 F.2d 91, 92 (5th Cir. 1975).

Plaintiffs' Complaint once again contains only conclusory allegations that SBISD failed to train or supervise its employees "to address the needs of children in general." Dkt. 1 at ¶¶ 54-55. Plaintiffs fail to allege any foundational facts capable of showing that SBISD's Board was directly involved in the training, that the

18

training provided to employees was inadequate, or that SBISD's Board was aware of a pattern of prior failure to store or dispose of rubber gloves that put them on notice that additional training was needed to prevent a violation of S.R.'s constitutional rights. Plaintiffs' allegations are woefully inadequate to establish municipal liability as to SBISD and their Fourteenth Amendment due process claims against SBISD must accordingly be dismissed.

## Prayer

Defendant Spring Branch Independent School District requests that its Motion to Dismiss pursuant to FRCP 12(b)(6) be granted, that Plaintiffs' claims against it be dismissed with prejudice, and that SBISD be awarded its taxable court costs and any and all other relief to which it may be justly entitled.

Respectfully submitted,

SPALDING NICHOLS LAMP LANGLOIS

/s/ Paul A. Lamp
PAUL A. LAMP
State Bar No. 24002443
Federal I.D. 21711
plamp@snll-law.com
MELISSA M. GOINS
State Bar No. 24074671
Federal I.D. 2089537
mgoins@snll-law.com
3700 Buffalo Speedway, Suite 500
Houston, Texas 77098
Telephone: 713-993-7060
Facsimile: 888-726-8374

ATTORNEYS FOR DEFENDANT SBISD

## **CERTIFICATE OF COMPLIANCE**

I certify that this Motion to Dismiss complies with the page limit, font, spacing, margins, and content requirements in the Court's Case Procedure 6 and Local Rule 7.1.

/s/ Paul A. Lamp<br>
Counsel for Defendant SBISD

## **CERTIFICATE OF SERVICE**

I certify that on this the 2nd day of April 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Martin J. Cirkiel<br>marty@cirkielaw.com<br>Juliana S. Swann<br>juliana@cirkielaw.com<br>Cirkiel Law Group, P.C.<br>1005 West 41st Street, Suite 201<br>Austin, Texas 78756<br>(Attorneys for Plaintiff) | Christopher Raney<br>craney@grsm.com<br>Kayla C. Miller<br>kmiller@grsm.com<br>Gordon Rees Scully Mansukhani, LLP<br>1900 West Loop South, Suite 1000<br>Houston, Texas 77027<br>(Attorneys for Defendants Spencer & Soliant Health) |
| Kenneth Rhodes<br>krhodes@rhodes-humble.com<br>Matthew Humble<br>mhumble@rhodes-humble.com<br>Rhodes Humble, LLP<br>1716 Briarcrest Drive, Suite 600<br>Bryan, Texas 77802<br>(Attorneys for Plaintiff) | |

/s/ Paul A. Lamp<br>
Attorney for Defendant SBISD