**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **S.R., Deceased, LAURA ROMO, and OMAR ROMO, Individually, and as Independent Administrator of the Estate of S.R., Deceased,** | § § § § § | |
| *Plaintiffs*, | § § | |
| **v.** | § § | **CIVIL ACTION NO. 4:25-cv-00508** |
| **SPRING BRANCH INDEPENDENT SCHOOL DISTRICT, JAMILA TRESSIE SPENCER, and SOLIANT HEALTH, LLC, d/b/a SOLIANT HEALTH,** | § § § § § § § | |
| *Defendants.* | § | |

**<u>JOINT PRETRIAL ORDER</u>**

## 1. APPEARANCE OF COUNSEL

**Plaintiffs' Counsel:**
Kenneth D. Rhodes
Matthew M. Humble
Rhodes Humble, LLP
1716 Briarcrest, Suite 600
Bryan, Texas 77802
<u>krhodes@rhodes-humble.com</u>
<u>mhumble@rhodes-humble.com</u>
Telephone: (979) 314-0150

Martin J. Cirkiel
State Bar No. 00783829
Fed. ID. 21488

1

Marty@cirkielaw.com [Email]
Julianna S. Swann
State Bar No. 24130061
Julianna@cirkielaw.com [Email]
1005 West 41st Street, Suite 201
Austin, Texas 78756
(512) 244–6658 [Telephone]
(512) 244–6014 [Facsimile]

**Defendant Spring Branch Independent School District's Counsel:**
Paul A. Lamp
Melissa M. Goins
Spalding Nichols Lamp Langlois
3700 Buffalo Speedway, Suite 500
Houston, Texas 77098
plamp@snll-law.com
mgoins@snll-law.com
Telephone: (713) 993-7060
Facsimile: (888) 726-8374

**Defendants Soliant Health, LLC and Jamila Tressie Spencer's Counsel:**
Chris Raney
Kayla C. Miller
Gordon Rees Scully Mansukhani LLP
1900 West Loop South, Suite 1000
Houston, Texas 77027
craney@grsm.com
kmiller@grsm.com
Telephone: (713) 961-3366
Facsimile: (713) 961-3938

## 2. STATEMENT OF THE CASE

This case arises out of the death of Laura and Omar Romo's son, S.R., who was a ninth-grade special education student at Stratford High School in Spring Branch Independent School District (SBISD or the District). On February 6, 2023, while S.R. was in Stratford High School's gymnasium, he collapsed. School and emergency personnel were contacted and began tending to S.R. after his collapse. Defendant Soliant Health, LLC, a staffing company, employed Defendant Jamila

Tressie Spencer, who was placed to work for SBISD as a speech language pathologist assistant. Ms. Spencer was present in the gymnasium when S.R. collapsed. Thereafter, S.R. was transported to the hospital, where he was pronounced dead two days later. S.R.'s primary cause of death was "asphyxia due to obstruction of airway by foreign object (glove) in a [] person."

Plaintiffs contend that SBISD failed to accommodate S.R.'s disabilities in violation of Section 504 of the Rehabilitation Act of 1973 (Section 504) and Title II of the Americans with Disabilities Act (ADA). Plaintiffs contend that SBISD knew of S.R.'s disability, failed to make reasonable accommodation for S.R.'s known limitations, and that the failure to accommodate S.R. was intentional based upon his disability. SBISD contends that it did not exclude S.R. from the District's educational program, deny S.R. meaningful access to that program, or intentionally discriminate against S.R. based upon his disability.

Plaintiffs contend that Jamila Tressie Spencer was negligent in failing to monitor or supervise S.R. and failed to render aid to him when he collapsed in the gymnasium. Plaintiffs also contend that Soliant Health, LLC, employed Jamila Tressie Spencer to provide contract speech pathology work for SBISD, and is therefore, vicariously liable to Plaintiffs for her conduct. Plaintiffs further contend that Soliant Health, LLC, breached its duty of care to adequately train or supervise Ms. Spencer and that the lack of training and/or supervision exposed S.R. to a significant risk of harm. Ms. Spencer contends that she had no duty to monitor, supervise, or render medical care to S.R. and that her alleged inaction was not the proximate cause of S.R.'s death. Soliant Health, LLC contends that it is not vicariously liable for Ms. Spencer's conduct or independently liable, and that it had no contractual obligation to provide Ms. Spencer with any training and no responsibility to otherwise supervise its personnel. Ms. Spencer also contends that she is immune from civil liability as a "professional employee" under Section 22.0511 of the Texas Education Code.

### 3. JURISDICTION

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiffs assert federal claims against Defendant SBISD. This Court has supplemental jurisdiction over Plaintiffs state law and common law claims against Defendants Soliant Health, LLC and Ms. Spencer pursuant to 28 U.S.C. § 1367. Jurisdiction is not at issue.

## 4.  MOTIONS

**Plaintiffs' Motion in Limine attached as Exhibit A.**

**SBISD's Motion in Limine attached as Exhibit B.**

**Soliant Health and Spencer's Motion in Limine attached as Exhibit C.**

## 5.  CONTENTIONS OF THE PARTIES

### Plaintiffs

S.R. was a fifteen-year-old student attending SBISD.  S.R. suffered from profound physical and cognitive disabilities, including Williams Beuren Depletion Syndrome, autism spectrum disorder, legal blindness, and significant cognitive impairments. Because of these conditions, S.R. required extensive assistance with daily living tasks and constant supervision for his safety.

Most significantly, S.R. had a well-documented and longstanding propensity to place unsafe objects in his mouth and swallow them. This behavior had caused serious incidents in the past, including a 2018 incident at a SBISD school in which S.R. swallowed a binder clip and required hospitalization and intubation. In the years that followed, S.R. repeatedly ingested foreign objects, including tissues and rubber. There is no dispute that SBISD and its personnel were aware of this propensity.

School records, evaluations, and internal communications repeatedly documented that S.R. required constant supervision in all environments because he could not distinguish safe from unsafe objects to place in his mouth. A 2021 Full and Individual Evaluation specifically noted that S.R. "requires constant supervision" and had "a history of putting dangerous objects in his mouth and swallowing them." The same evaluation recognized that S.R.'s use of a "chewy toy" helped prevent him from seeking out dangerous objects. S.R.'s parents ensured that a chewy toy was regularly sent to school with him for this purpose. SBISD chose not to use the chewy toy on many occasions, including February 6, 2023, the day of S.R.'s choking incident.

S.R. was placed in a Life Skills classroom because of his substantial disabilities and need for close monitoring. His teacher, Connie Bayaborda, had previously implemented a written informal safety plan requiring that his environment be kept free of objects he could ingest, that his mouth be checked

4

frequently, that he be escorted when moving between locations, and that he never be left alone. Despite these known risks and precautions, these measures were never formalized into his IEP or consistently implemented.

On January 25, 2023–just twelve days before the incident–S.R.'s mother attended an ARD meeting and specifically requested one-on-one supervision for S.R. while he was in the gymnasium. She even offered to pay for a private caregiver to accompany him. Tragically, this request was denied by SBISD.

On February 6, 2023, S.R.'s fifteenth birthday, he arrived at Stratford High School. He had only recently returned to school after another suspected swallowing incident days earlier. Surveillance footage from that day shows S.R. spending significant portions of the morning isolated, unsupervised, and kept in a makeshift caged area within the classroom. Despite it being available, he was not provided his chewy toy by staff. The classroom and surrounding areas contained readily accessible rubber gloves and other potentially ingestible items.

After the lunch period, S.R. obtained a rubber glove or piece of a rubber glove and placed it in his mouth. He later entered the gymnasium. Surveillance footage shows him in visible distress for an extended period. He stumbled, fell, crawled on his knees, hit his head, and repeatedly brought his hands to his mouth. Despite these visible signs of distress, no staff member intervened; rather, SBISD staff appear to be huddled together, chatting.

During this period, on the other side of the gymnasium near S.R., Spencer, a speech-language pathology assistant employed by Soliant Health and assigned to Stratford High School, was present. Spencer had previously observed S.R. on multiple occasions and was familiar with his disabilities. Spencer was CPR certified. Yet surveillance footage and witness testimony indicate she failed to timely respond while S.R. visibly deteriorated nearby.

Ultimately, S.R. staggered and collapsed immediately next to Spencer. By that point, he appeared blue in color and was in obvious respiratory distress. Despite being CPR certified, Spencer did not check S.R.'s airway, attempt the Heimlich maneuver, initiate CPR, or otherwise render aid. Instead, she merely called out to another teacher. There is a dispute about whether this other teacher instructed Spencer not to assist S.R (Spencer testified that she received this instruction and the other teacher testified to the contrary). For approximately four (4) minutes, therefore, S.R. lay on the gymnasium floor without assistance as he continued to choke and

suffer oxygen deprivation. Only after other school the nurse arrived was CPR finally initiated.

It was later determined that S.R.'s airway had been obstructed by a piece of purple medical glove consistent with those used and accessible within the Life Skills classroom and surrounding areas. S.R. suffered catastrophic oxygen deprivation and died a few days later. SBISD's investigating police officer met with the paramedics that removed the glove from S.R., and took samples from the Life Skills classroom, and the paramedics identified the sample as being the same type of glove removed from S.R.'s airway.

This tragedy occurred despite years of warnings, repeated prior incidents, known risks, and readily available preventative measures

**Defendant SBISD**

Plaintiffs' son, S.R., was a ninth-grade Life Skills student at Stratford High School within SBISD during the 2022-2023 school year. S.R. met the eligibility criteria for Intellectual Disability, Visual Impairment, and Other Health Impairment and had Individualized Education Plan (IEPs) during the 2022-2023 school year that included constant supervision, including during transitions and unstructured times. S.R.'s Admission, Review, and Dismissal (ARD) committee, which included Laura Romo, did not discuss, request, approve, or deny a chewy toy accommodation or one-on-one supervision for the 2022-2023 school year. Plaintiffs would sometimes send a chewy toy with S.R. to school with no specific instructions or medical basis and if it was at school, S.R. was permitted to utilize the toy. The primary use of S.R.'s chewy toy was to prevent teeth grinding. On February 6, 2023, S.R.'s classroom was checked for small objects, and no one saw S.R. pick up or mouth any foreign object before he collapsed in the gym. SBISD's law enforcement investigation, medical examiner findings, and video reviews determined that the manner of death was accidental due to airway obstruction by a piece of a glove. There is no evidence demonstrate how, when, or where S.R. obtained a piece of a glove that was found in his airway on February 6, 2023.

Plaintiffs cannot establish their failure to accommodate claim under either Section 504 of Title II of the ADA because the District did not refuse reasonable accommodations, did not deny S.R. meaningful access, and did not act with deliberate indifference to S.R.'s disability. S.R.'s chewy toy or one-on-one supervision were not discussed, approved, or denied accommodations tied to S.R. accessing the District's education programs, and even the chewy toy was, SBISD

6

allowed S.R. to use the toy when his parents sent it with him to school. Plaintiffs' one time demand for a private Medicaid-funded aide, when S.R. was in elementary school, is not a reasonable accommodation as it would fundamentally alter the District's staffing and was also not required under S.R.'s IEP. S.R. was not excluded from or denied benefits of SBISD programs because he received constant supervision and access consistent with his needs, per his IEP. Furthermore, Plaintiffs cannot prove intentional discrimination because there is no evidence as to how, when, or where S.R. obtained the foreign object, breaking any causal link between alleged failures of SBISD and S.R.'s accidental death.

Finally, all of Plaintiffs' claimed damages fail as a matter of law because emotional distress damages are unavailable under Section 504 and Title II of the ADA, and Plaintiffs have no recoverable out-of-pocket expenses for physical injuries related to their failure to accommodate claim against the District.

### Defendants Soliant Health and Spencer

Soliant is a staffing agency that places special education professionals at school districts across the country. In January 2023, Soliant hired Ms. Spencer to fill a temporary position in SBISD as an assistant speech language pathologist. Soliant onboarded Ms. Spencer by confirming her license was valid, running a background check, conducting a pre-employment drug screening, and executing employment documentation. Soliant did not provide Ms. Spencer any training for the position. SBISD provided requisite training to Ms. Spencer.

Once Ms. Spencer was placed with SBISD, Soliant had no involvement or input in her day-to-day job or functions. Soliant does not supervise Ms. Spencer after she is placed for assignment at a school. After placing Ms. Spencer with SBISD, the only responsibility Soliant retains as to Ms. Spencer is to pay her salary. Soliant knew nothing about S.R. before placing Ms. Spencer in SBISD. SBISD did not tell Soliant or Ms. Spencer anything about S.R. before the assignment. The assignment did not contemplate that Ms. Spencer would provide any services to S.R. at the school.

Ms. Spencer began working in SBISD in January 2023 and reported to SBISD speech language pathologist Michael Williams. Williams assigned 60 SBISD students at three different campuses to Ms. Spencer, including 20 students at Stratford High School.

As part of her position as an assistant speech language pathologist, SBISD provided Ms. Spencer access to the Individualized Education Plans ("IEPs") of the students assigned to her for speech therapy. By reviewing the students' IEPs, Ms. Spencer became familiar with those students' accommodations and support services prescribed by SBISD. SBISD did not provide Ms. Spencer with any IEPs for students that would not be receiving speech therapy from Ms. Spencer.

S.R. was not assigned to Ms. Spencer for speech therapy. In fact, S.R. had not received speech therapy through SBISD since middle school. Ms. Spencer had no interactions with S.R. before the incident.

Ms. Spencer knew nothing about S.R. at the time of the incident. She did not even know his name until the day of the incident. Ms. Spencer had no personal knowledge of S.R.'s background or medical conditions. She was not provided nor did she review any IEP, Full and Individual Evaluation ("FIE"), Admission, Review & Dismissal ("ARD") minutes, or medical history for S.R. She had no personal knowledge of his medical diagnoses. Ms. Spencer had no personal knowledge that S.R. was a choking risk or that he had a propensity to put inedible objects in his mouth. SBISD did not inform Ms. Spencer that S.R.'s mouth should be checked regularly, that small objects should not be left in his presence, or that he should use a chewy toy.

Connie Bayaborda, S.R.'s Life Skills teacher of nearly 4 years, never told Ms. Spencer about S.R.'s disabilities because Ms. Spencer was not providing S.R. any speech services. Ms. Bayaborda never informed Ms. Spencer about S.R.'s diagnoses, accommodations, or that he was a choking hazard. Ms. Bayaborda did not tell Ms. Spencer to supervise S.R. in the gym on the date of the incident, nor did she expect Ms. Spencer to supervise S.R. "because she's not part of [SBISD]." In fact, when Ms. Spencer provides speech therapy to Life Skills students, a SBISD Life Skills teacher is always present.

On February 6, 2023, Ms. Spencer reported to the Stratford gym at approximately noon to provide speech therapy to the Life Skills students assigned to her. The entire Life Skills class was in the gym with several SBISD staff, including the Life Skills teacher Connie Bayaborda.

Ms. Spencer conducted a group speech therapy lesson to three Life Skills students where they played basketball to work towards their goal of advancing their social skills. After completing this speech therapy session, Ms. Spencer released the

students back to their class. Ms. Spencer stayed in the gym to work on her therapy notes on her SBISD-issued laptop. Ms. Spencer did not have an assigned place on Stratford's campus to perform administrative work on her computer, and occasionally made use of the gym to work on her notes.

While working on her therapy notes in the gym, S.R. tripped and fell near Ms. Spencer's feet. Ms. Spencer took notice of S.R. and immediately got the attention of S.R.'s Life Skills teacher, Ms. Bayaborda, who came to S.R.'s aid from across the gym. Ms. Bayaborda instructed others to call 911 and the nurse came to the gym to help.

Ms. Spencer contends she had no duty to supervise S.R. at any time during the 2022-2023 school year. Ms. Spencer was not in the gym on the date of the incident for the purpose of supervising or monitoring S.R. Ms. Spencer had no responsibility for S.R. on the date of the incident. Similarly, Ms. Spencer had no duty to render life-saving care to S.R. Ms. Spencer's alleged inaction did not proximately cause S.R.'s death.

Soliant had no duty, contractual or otherwise, to provide Ms. Spencer any training prior to placing Ms. Spencer with SBISD. Ms. Spencer's lack of training did not expose S.R. to any risk of harm. Soliant had no responsibility, contractual or otherwise, to supervise Ms. Spencer once she was placed with SBISD.

## 6. ADMISSIONS OF FACT

- SBISD is a public school district governed by a seven-member Board of Trustees.

- During the 2021-2022 school year, S.R. attended the eighth grade at Spring Forest Middle School.

- During the 2021-2022 school year, Connie Bayaborda was S.R.'s Life Skills teacher at Spring Forest Middle School.

- S.R. completed his eighth-grade year at Spring Forest Middle School and began attending Stratford High School for his ninth-grade year.

- During the 2022-2023 school year, S.R. attended the ninth grade at Stratford High School.

- During the 2022-2023 school year, Connie Bayaborda was S.R.'s Life Skills teacher from late September 2022 until February 2023.

- During the 2022-2023 school year, S.R. met specific Federal eligibility criteria (has both a disability and educational need for special education services) based upon conditions of Intellectual Disability, Visual Impairment, and Other Health Impairment Chromosome abnormality, 7q11.23 duplication syndrome.

- As of the 2022-2023 school year, S.R. had been diagnosed with Williams-Beuren syndrome (WBS), Autism Spectrum Disorder, and visual impairment.

- Spring Forest Middle School and Stratford High School are within SBISD.

- On February 6, 2023, S.R. experienced a medical emergency in the middle gymnasium at Stratford High School.

- On February 8, 2023, S.R. was pronounced dead at the hospital.

- The Harris County Medical Examiner listed S.R.'s manner of death as an "accident" with the cause of death as "asphyxia due to obstruction of airway by foreign object (glove) in a person with Williams-Beuren region depletion syndrome."

- During all relevant times, Jamila Tressie Spencer was an employee of Soliant Health, LLC.

- During all relevant times, SBISD and Soliant Health, LLC were parties to a master contract for professional services whereby Soliant Health, LLC, agreed to provide, among other things, speech language pathology services to SBISD from September 29, 2022, to August 31, 2027.

- In January 2023, Jamila Tressie Spencer began working for Soliant Health, LLC as a speech language pathologist assistant, and Soliant Health, LLC assigned Ms. Spencer to perform speech language pathology in SBISD schools, which included Stratford High School, pursuant to the master contract for professional services between SBISD and Soliant Health, LLC.

10

- S.R. had not received speech therapy services through SBISD since 2018.

- S.R. did not receive speech therapy services from SBISD during the 2022-2023 school year.

- S.R. was not assigned to receive speech therapy services from Jamila Tressie Spencer at any time that Ms. Spencer worked as a contract speech language pathologist assistant at Stratford High School in SBISD.

- S.R. parents are Omar Romo and Laura Romo.

## 7. CONTESTED ISSUES OF FACT

- Whether any witness has actual knowledge regarding how, when, or where S.R. obtained the foreign object that was found in his airway on February 6, 2023.

- S.R. had a propensity to place foreign objects in his mouth and was unable to distinguish safe from unsafe objects.

- Whether SBISD had actual knowledge of S.R.'s disability and the disability's resulting limitations affecting S.R.'s ability to participate in or benefit from SBISD's educational programs, services, or activities.

- Whether SBISD had actual knowledge that a reasonable accommodation was necessary to address known limitations of S.R.'s disability.

- Whether SBISD failed to reasonably accommodate S.R.'s known limitations.

- Whether SBISD's failure to accommodate S.R. was by reason of S.R.'s disability.

- The nature, extent, and amount of damages, if any, sustained by Plaintiffs.

- Whether Spencer's job duties at SBISD required her to provide life-saving medical care to students to which she was not assigned.

- Whether Spencer observed or should have observed S.R. in visible respiratory

11

distress prior to his collapse.

- Whether Jamila Tressie Spencer was familiar with S.R. and knew or should have known of his disabilities and vulnerabilities.

- Whether Spencer failed to timely check S.R.'s airway, perform the Heimlich maneuver, initiate CPR, or otherwise render aid.

- Whether Spencer's conduct or inaction caused or contributed to S.R.'s death.

- Whether earlier intervention by Spencer would have prevented or reduced S.R.'s injuries or death.

- Whether Spencer's conduct or inaction created an extreme degree of risk of serious harm to S.R.

- Whether Spencer had actual awareness of that risk but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of S.R.

- Whether Soliant Health failed to train, supervise, or prepare Spencer for work in a special education environment or to respond to foreseeable emergencies.

- Whether Soliant Health's failure to train or supervise Spencer created an extreme degree of risk of serious harm to vulnerable students such as S.R.

- Whether Soliant Health had actual awareness of that risk but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of S.R.

## 8.  AGREED PROPOSITIONS OF LAW

### *Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act*

The ADA and Section 504 prohibit discrimination against qualified individuals with disabilities. Section 504 was enacted "to ensure that handicapped individuals are not denied jobs or other benefits because of prejudiced attitudes or ignorance of others." *Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (quotations omitted); *Brennan v. Stewart*, 834 F.2d 1248, 1259 (5th Cir. 1988). Similarly, the ADA is designed to provide a clear and comprehensive national

mandate for the elimination of discrimination against individuals with disabilities. *Delano-Pyle*, 302 F.3d at 574. Much like Section 504, Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The close relationship between Title II of the ADA and Section 504 means that precedents interpreting either law generally apply to both. *Smith v. Harris Cty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020); *see also Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (per curiam).

To establish a *prima facie* case of discrimination under either Act, a plaintiff must demonstrate that: (1) a qualifying disability; (2) exclusion from participation in or denied the benefits of services, programs, or activities for which a public entity is responsible, or was subjected to discrimination by the public entity; and (3) such discrimination was by reason of the plaintiff's disability. *J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023); *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004); *D.A. v. Houston Indep. Sch. Dist. (D.A. I)*, 716 F. Supp.2d 603, 618 (S.D. Tex. 2009).

"[A] cause of action is stated under § 504 when it is alleged that a school district has refused to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program." *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist. (D.A. II)*, 629 F.3d 450, 453 (5th Cir. 2010); *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 990 (5th Cir. 2014). To prove their failure to accommodate claim, a plaintiff must show that (1) the plaintiff's disability and limitations were known by the entity; (2) the entity failed to make reasonable accommodations for the known limitations; and (3) the failure was intentional. *See, e.g., Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013); *D.A. II*, 629 F.3d at 455; *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1993). The federal disability discrimination laws mandate only the right to reasonable accommodations for qualified individuals with disabilities; they do not provide an automatic right to preferred accommodations. *Shurb v. Univ. of Tex. Health Sci. Ctr.*, 65 F. Supp. 3d 700, 710 (S.D. Tex. 2014); *I.A. v. Seguin Indep. Sch. Dist.*, 881 F.Supp.2d 770, 780 (W.D. Tex. 2012).

To show that the denial of services or discrimination was intentional or 'by reason of' disability, a plaintiff must provide "proof that 'the disability and its consequential limitations were known by the entity providing public services.'" *Windham v. Harris Cty., Tex.*, 875 F.3d 229, 236 (5th Cir. 2017) (quoting J*in Choi*

13

*v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 215 (5th Cir. 2015)) (internal brackets omitted); *E.M. b/n/f Guerra v. San Benito Consol. Indep. Sch. Dist.*, 374 F. Supp.3d 616, 624 (S.D. Tex. 2019); *Marvin H.*, 714 F.2d at 1356; *Estate of A.R. v. Grier*, 2013 WL 391159, at *10 (S.D. Tex. 2013). The standard for "intentional discrimination" is deliberate indifference. *McCollum v. Livingston*, 2017 WL 2215627, at * 2, n.3 (S.D. Tex. 2017); *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 530 (5th Cir. 1994).

To show deliberate indifference requires a plaintiff to show: (1) an unusually serious risk of harm existed; (2) the defendant had actual knowledge of, or was willfully blind to an elevated risk and (3) the defendant failed to take steps to address the risk. *Leffall v. Dallas Independent School District*, 28 F.3d 521, 530 (5th Cir. 1994).

A plaintiff must demonstrate that the entity knew the plaintiff needed reasonable accommodations and thereafter failed to act despite that knowledge. *Alexander v. Choate*, 469 U.S. 287, 295 (1985). "Mere knowledge of the disability is not enough; the service provider must also have understood the limitations the plaintiff experienced as a result of that disability. Otherwise, it would be impossible for the provider to ascertain whether an accommodation is needed at all, much less identify an accommodation that would be reasonable under the circumstances. Thus, because the ADA does not require clairvoyance, the burden falls on the plaintiff to specifically identify the disability and resulting limitations, and to request an accommodation in direct and specific terms. When a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that the disability, resulting limitation, and necessary reasonable accommodation were open, obvious, and apparent to the entity's relevant agents." *Windham*, 875 F.3d at 236-37. When a disability is mental, rather than physical, the disability, resulting limitations, and necessary reasonable accommodations are often not "open, obvious, and apparent." *Taylor*, 93 F.3d at 165.

In summary, both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals. Where a defendant fails to meet this affirmative obligation, the cause of that failure, solely or not, is irrelevant. *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 455 (5th Cir. 2005).

Moreover the Plaintiff need not show discriminatory animus or intent as discrimination against the disabled is most often the product, not of invidious

14

animus, but rather of thoughtlessness and indifference-benign neglect. *Alexander v. Choate*, 469 U.S. 287, 299 (1985).

Further, the School District is liable for acts and omissions of Staff pursuant to a theory of Respondeat Superior. *Delano-Pyle v. Victoria County*, 302 F. 3d  567, 574-7 (5th Cir. 2002).

S.R. can recover damages against the School District if he can show he experienced a "concrete, negative effect." *Davis v. Monroe County, Bd. of Educ.*, 526 U.S. 629 (1999). Pursuant to both the Rehab Act and the ADA, S.R. can seek remedies for pain and suffering caused by a physical injury. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 678 (5th Cir. 2020) affirmed on different grounds at 596 U.S. 212; 142 S. Ct. 1562; 212 L. Ed. 2d 552 (2022). Pursuant to both the Rehab Act and the ADA, S.R. can seek consequential damages due to loss of educational opportunities. *A.W. v. Coweta County School District*, 110 F.4th 1309 (11th Cir. 2024). Pursuant to both the Rehab Act and the ADA S.R. can seek nominal damages. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021). Pursuant to both the Rehab Act and the ADA, S.R.'s parents have a right to reimburse out-of-pocket expenses incurred due to the acts and omissions of the School District. *Rideua v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 160 (5th Cir. 2016).

### *Negligence and Vicarious Liability*

The elements of a negligence claim are: (a) a legal duty owed by the defendant to the plaintiff; (b) breach of that duty; and (c) damages proximately resulting from that breach. *Short Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 456 (5th Cir. 2003).

The threshold inquiry in a negligence claim is duty. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). The existence of a legal duty is a question of law for the Court. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

In determining whether a duty exists, courts consider the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

Proximate cause consists of two elements: cause in fact and foreseeability. *D.*

*Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002); Travis v. City of Mesquite, 830 S.W.2d 94, 98 (Tex. 1992).

A negligence finding is a prerequisite to a gross negligence claim. *Quaker Petroleum Chems. Co. v. Waldrop*, 75 S.W.3d 549, 553 (Tex. App.—San Antonio 2002, no pet.).

Gross negligence consists of an act or omission involving an extreme degree of risk, considering the probability and magnitude of potential harm, of which the actor has actual, subjective awareness, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others. TEX. CIV. PRAC. & REM. CODE § 41.001(11).

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction as to the truth of the allegations sought to be established. TEX. CIV. PRAC. & REM. CODE § 41.001(2).

Exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm resulted from fraud, malice, or gross negligence. TEX. CIV. PRAC. & REM. CODE § 41.003(a).

## 9.  CONTESTED PROPOSITIONS OF LAW

**Plaintiffs' Memorandum of Contested Propositions of Law attached as Exhibit D.**

**SBISD's Memorandum of Contested Propositions of Law attached as Exhibit E.**

**Defendants Soliant and Spencer**

Defendants Soliant and Spencer contest that Plaintiffs brought a negligent undertaking cause of action. Plaintiffs did not plead a negligent undertaking cause of action in their First Amended Complaint.

Texas law rarely imposes a duty to aid an injured party except on the individual who caused the injury. *See Abalos v. Oil Dev. Co. of Texas*, 544 S.W.2d 627, 633 (Tex. 1976). ("[I]f a party negligently creates a dangerous situation it then becomes his duty to do something about it. On the other hand, it may be said generally, as a matter of law, that a mere bystander who did not create the dangerous

situation is not required to become the good Samaritan and prevent injury to others."). "Deeply rooted in the common law is the doctrine that a person owes no duty to render aid to one for whose initial injury he is not liable." *Applebaum v. Nemon*, 678 S.W.2d 533, 535 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (citations omitted). However, "a special relationship may give rise to the duty to aid or protect. The relationship must exist between the parties, and the risk of harm, or of further harm, must arise in the course and scope of that relationship." *Howell v. City Towing Assocs., Inc.*, 717 S.W.2d 729, 733 (Tex. Civ. App.—San Antonio 1986, writ ref'd n.r.e). Even when a special relationship gives rise to a duty to provide aid, the duty may be limited to certain forms of aid that do not require special training. *Applebaum*, 678 S.W.2d at 537. Thus, a party seeking to impose a duty to render aid has to show that a special relationship exists and that the defendant has a duty to perform the particular type of aid. *Potter v. 24 Hour Fitness*, No. 3:12-cv-453-P, 2014 WL 11633691 (N.D. Tex. June 6, 2014).

Spencer is a "professional employee" immune from civil liability to Plaintiffs under Section 22.0511 of the Texas Education Code. Under Section 22.0511 of the Texas Education Code:

> A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

TEX. EDUC. CODE §22.051.

This immunity bars personal liability for state tort law claims other than those explicitly mentioned in the statute. *See K.T. v. Natalia I.S.D.*, No. SA-09-CV-285-XR, 2010 WL 1484709, at *2 (W.D. Tex. Apr. 12, 2010).

Thus, Spencer is immune to Plaintiffs' negligence claims if:

- she is a professional employee of Spring Branch ISD;

- the alleged negligent acts were within the scope of her employment duties that involved the exercise of judgment or discretion; and

17

- the negligent acts did not involve disciplining a student with excessive force of causing a student bodily injury.

First, a "professional employee of a school district," for purposes of immunity, is defined as "a teacher employed by a company that contracts with a school district to provide the teacher's services to the district" or "any other person employed by a school district whose employment requires certification and the exercise of discretion." TEX. EDUC. CODE §22.051(1)(2), (6). Plaintiffs allege Spencer was employed by Soliant and that Soliant had a contract with Spring Branch ISD to provide speech pathology services. Thus, the first element is satisfied.

Second, Plaintiffs allege that the scope of Spencer's employment duties included the supervision of S.R. Spencer, as an assistant speech pathologist, was required to be licensed by the State of Texas. TEX. OCC. CODE §401.301. "An act is discretionary under Texas law if it requires personal deliberation, decision, and judgment." *Finlan v. Dallas Indep. Sch. Dist.*, 90 S.W.3d 395, 409 (Tex. App.— Dallas 2002, pet. denied). Discretionary authority exists when the law does not specify the precise action that an official must take. *Id.* Here, Plaintiffs' Amended Complaint does not identify, and Defendants have not located, any law that prescribed Spencer's required actions as to S.R. Therefore, Spencer's alleged negligent acts necessarily involved the exercise of discretion.

To find that an act committed by a professional employee was within the course and scope of her employment, the finder of fact must determine that the act was "(1) within the general authority given to her, (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed." *Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995). To come within the scope of employment, the conduct must be of the "same general nature" as the conduct authorized by the employer or incidental to the conduct authorized. *Kelly v. Stone*, 898 S.W.2d 924, 927 (Tex. App.—Eastland 1995, writ denied). Plaintiffs' allegations in the Amended Complaint satisfy the second immunity element. Plaintiffs allege Spencer had a duty to supervise, monitor, and render aid to S.R. and that Spencer allegedly breached that duty by not providing medical care to S.R. Consequently, Spencer has established the second element of the immunity statute.

The third element of the statute does not apply because the allegations against Spencer do not involve disciplining a student with excessive force of causing a student bodily injury.

**Soliant Health, LLC and Jamila Tressie Spencer's Memorandum of Contested Propositions of Law attached as Exhibit F.**

## 10. EXHIBITS

**Plaintiff's Exhibit List is attached as Exhibit G.**

**SBISD's Exhibit List is attached as Exhibit H.**

**Soliant Health and Spencer's Exhibit List is attached as Exhibit I.**

The parties will exchange trial exhibits pursuant to the Court's Scheduling Order.

## 11. WITNESSES

**Plaintiffs' Witness List is attached as Exhibit J.**

**SBISD's Witness List is attached as Exhibit K.**

**Soliant Health and Spencer's Witness List is attached as Exhibit L.**

## 12. SETTLEMENT

The Parties are currently set for a settlement conference before Magistrate Judge Christina Bryan on May 8, 2026.

## 13. TRIAL

**Plaintiff**

This matter will proceed as a jury trial. Plaintiffs estimate trial to take 6 to 10 days. Kenneth D. Rhodes, lead counsel for Plaintiffs, has a pre-planned vacation from June 28- July 6, 2026.  Plaintiffs' expert witness, Dr. Glenn Birnbaum, has a pre-planned trip from June 4- August 13, 2026. Plaintiffs would respectfully request that the case not be set for trial during the weeks Plaintiffs and Dr. Glenn Birnbaum will be traveling.

**Defendant SBISD**

This matter will proceed as a jury trial. Defendant SBISD estimates trial to take 4 to 5 days. Defendant SBISD does not foresee any logistical problems at this time.

**Defendants Soliant Health and Spencer**

This matter will proceed as a jury trial. Defendants Soliant and Spencer estimate trial to take 4 to 5 days. Chris Raney, lead counsel for Defendants Soliant and Spencer, has a pre-planned, pre-paid vacation from June 8 – 21, 2026. He and his wife are taking their nine-year old son to Japan for his tenth birthday. Mr. Raney would respectfully request that the case not be set for trial during the weeks he will be in Japan.

## 14. ATTACHMENTS

**Plaintiffs' Proposed Questions for Voir Dire are attached as Exhibit M.**

**SBISD's Proposed Questions for Voir Dire are attached as Exhibit N.**

**Soliant Health, LLC and Jamila Tressie Spencer's Proposed Questions for Voir Dire are attached as Exhibit O.**

**The Parties' Joint Proposed Jury Instructions and Charge are attached as Exhibit P.**

**Plaintiffs' Original Jury Instructions and Charge for clarification are attached as Exhibit Q.**

Date: _____        _____
                                                        UNITED STATES DISTRICT JUDGE

20

Approved:

Date: <u>April 30, 2026</u>            <u>/s/ Kenneth D. Rhodes</u>
                                                Attorney-in-Charge, Plaintiff

Date: <u>April 30, 2026</u>            <u>/s/ Paul A. Lamp</u>
                                                Attorney-in-Charge, Defendant SBISD

Date: <u>April 30, 2026</u>            <u>/s/ Christopher Raney</u>
                                                Attorney-in-Charge, Defendants Soliant
                                                Health and Jamila Tressie Spencer

## CERTIFICATE OF SERVICE

I certify that on this the 30th day of April 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

                                               <u>/s/ Paul A. Lamp</u>
                                               Attorney for Defendant SBISD